**In re Edward A. LIPSEY, Jr., Debtor.**

**Ralph JONES d/b/a Jones Supply, Plaintiff,**

v.

**Edward A. LIPSEY, Jr., Defendant.**

**Bankruptcy No. 38001254.
Adv. No. 3800312.**

United States Bankruptcy Court,
W. D. Kentucky.

April 6, 1982.

Thomas E. Cooper, Elizabethtown, Ky., for plaintiff.

William P. Mulloy and F. Larkin Fore, Louisville, Ky., for defendant, Edward A. Lipsey, Jr.

Robert H. Littlefield, Louisville, Ky., for defendant, Lula Lipsey.

Wallace H. Spalding, Jr., Louisville, Ky., trustee.

## MEMORANDUM AND ORDER

MERRITT S. DEITZ, Bankruptcy Judge.

Edward Lipsey, a builder-contractor who was twice married to Lula Lipsey, agreed to

do the framing and concrete work on a new home for his former wife instead of paying her approximately $2,000 in back child support.

Left unpaid after the work was completed was the material supplier, Ralph Jones. When Lipsey filed bankruptcy—also for the second time—Jones sued in this Court to have the unpaid balance of Lipsey's supply bill, $4,400, declared nondischargeable.

The debt to Jones cannot be directly traced to specific materials incorporated in Mrs. Lipsey's house. Lipsey was buying materials on five separate jobs at the time. Jones retired his invoices on a first-in, first-out basis as payments were made, with some exceptions. Lipsey's records were even less adequate. Jones did not file a materialman's lien on Mrs. Lipsey's house to protect his interest.

The original complaint in this action was dismissed for failure to state a cause of action. After reinstatement and amendment of the complaint, a rescheduled trial date and another dismissal, plaintiff was again permitted to amend the complaint to state a cause of action.

The final theory of plaintiff's case is that the Lipsey debt to Jones resulted from a fraudulent conspiracy with Mrs. Lipsey and is thus nondischargeable under Section 523(a)(2) of the Bankruptcy Code. It was Lipsey's intent, in consort with his former wife, so the theory goes, to fraudulently convert a nondischargeable debt (maintenance to Mrs. Lipsey) into a dischargeable one (the debt to Jones).

Even thrice stated, the claim does not fit the facts. This record reveals tenacity of counsel and indulgence by the court, but it does not reveal fraud or conspiracy.

Counsel for Jones, openly cynical about former spouses who maintain a friendly relationship, conducted a pointedly personal line of questioning designed to elicit evidence of a conspiracy to defraud Jones. He got nowhere. Describing the dissolution of

their first marriage, Mrs. Lipsey said that the couple, through their attorney,

"... settled things, what he was to get, his vehicle, I was to get mine. He got his house, I got mine. He blowed his, I kept mine. I kept my automobile and I worked every day with one lung, that's how I accumulated what I got right today. I worked for it. And I don't intend to give it to him or nobody else, what I got." [1]

Mrs. Lipsey, who had never taken her child custody claim back to court, was questioned on why she did not pay her former husband for the work on her house. She replied with a question of her own:

"Why should I? I am feeding his child, send it to school, taking care of it, and he owed me all that money back pay. I didn't figure I owed Mr. Lipsey anything. Do you think I did?" [2]

Responding in the negative, counsel changed the focus of the examination to bank accounts and other assets, including some rental properties she owned. Again with a favorable result, she reversed the role of interrogator:

"I ain't a person that ain't got no income or bum down here looking for a handout. Well, like I said, I had—well, I had the house rented on the corner for $150.00 a month. And I got a building over in Sonora rented for $75.00 a month. But the reason I let him frame my house is he wasn't paying me the alimony he was supposed to pay me. Might as well gotten something out of him, shouldn't I?" [3]

Elsewhere in her deposition, Mrs. Lipsey described the circumstances surrounding her remarriage to her former spouse:

"When I remarried him in '72 what belonged to me was mine. And the reason I married the man back, I thought we could make it. But we just could not make it married, because I ain't saying he ain't a good man. I could trust him with

1. Lula Lipsey deposition, Feb. 11, 1981, p. 70.

2. Id. at p. 73.

3. Id. at p. 77.

a million dollars, but he just doesn't settle down.  That's what it is." [4]

Throughout, Mrs. Lipsey's testimony is simple, direct and absolutely believable. Her characterization of the defendant, his erratic and unsuccessful business and domestic life, speak with a clarity upon which this Court cannot improve.  In the face of such powerful proof, a thin web of mere legal inferences is whisked away.

Nor does the testimony of Mr. Lipsey unmask the creature who "cunningly took unfair advantage" [5] of Jones; the defendant stands revealed only as a poor man who, unable to pay for shelter for his former wife and his son, helped build it with his hands.  In fact, there is even proof that it was Jones' threat of legal action against Lipsey that precipitated this bankruptcy. [6]

The components of fraud and the heavy burden of its proof are sufficiently known to counsel that they need not here be further explained and annotated.  Suffice it to say that far from fraud, what has been proven here is that two people with limited skills and even more limited finances tried to do their best with what they had, and one of them failed.  The complaint of Ralph Jones, which strains the judicial patience and the outer limits of legitimate legal theorizing, is therefore, for the third and final appealable time, dismissed.  Judgment shall be entered accordingly.

---

**4.**  Id. at p. 72.

**5.**  Plaintiff's Motion for Amendment, filed May 22, 1981, at ¶ 4.

**6.**  Deposition of J. D. Sullivan, Feb. 11, 1981, at pp. 9–10.